UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | |
|---|---|
| TONY A. COX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:14-cv-158-HSM-SKL |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tony A. Cox ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. Each party moved for judgment [Docs. 8 & 10] with supporting briefs [Docs. 9 & 11]. Plaintiff filed a response to Defendant's motion [Doc. 15] and this matter is now ripe. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 8] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 10] be **GRANTED**; and (3) Defendant's decision denying benefits be **AFFIRMED**.

I.   ADMINISTRATIVE PROCEEDINGS

This matter is before the Court for a second time. As set forth in the initial Report and Recommendation concerning Plaintiff's claim of disability dated September 7, 2012 ("first R&R"), Plaintiff filed for DIB and SSI benefits on October 5, 2009, alleging disability as of January 30, 2004. *Cox v. Comm'r of Soc. Sec.*, No. 1:11-cv-317, 2012 WL 4748347, at *1 (E.D. Tenn. Sept. 7, 2012), *adopted without objection by* No. 1:11-cv-317, 2012 WL 4748472 (E.D.

Tenn. Oct. 4, 2012). After Plaintiff's claim was denied initially, upon reconsideration, and by an Administrative Law Judge ("ALJ"), Plaintiff sought judicial review. *Cox*, 2012 WL 4748347, at *1. Upon judicial review, it was recommended that Plaintiff's claim be remanded to the Commissioner because "[t]he ALJ's decision does not reflect that the ALJ considered the entirety of the evidence which spoke to [adaptive functioning] deficits and, as such, does not contemplate whether any deficits were severe enough to meet the diagnostic description of Listing 12.05." *Id.* at *10. After neither party filed any objection to the first R&R, it was adopted and the claim was remanded for the Commissioner to specifically consider whether Plaintiff met the requirements of Listing 12.05. *Cox*, 2012 WL 4748472, at *1. Upon remand, Plaintiff attended his second hearing on January 14, 2014, before the same ALJ (Transcript [Doc. 5] ("Tr.") 506). The ALJ again issued an unfavorable decision dated January 24, 2014 (Tr. 459-78), which became the final decision of the Commissioner. This most recent unfavorable decision is now ripe for judicial review.

## II. FACTUAL BACKGROUND

### A. Education and Background

As found in the first R&R, Plaintiff was 36 at the time of the first hearing before the ALJ; he quit school in the ninth grade and could not read, but he could write his name only; he could recognize road signs by shape, but he had not driven for several years after losing his license for a DUI; and he had prior work experience as a frame builder from 1991 to 2008, but had not worked since 2008, which was when he was laid off from his job due to the economy. *Cox*, 2012 WL 4748347, at *1. In addition,

> Plaintiff's school records indicate he was below his grade level in first grade and was conditionally promoted to second grade. Plaintiff scored better than 40% of students nationally on a readiness test given in kindergarten or first grade. An achievement

test taken when Plaintiff was in second grade indicated Plaintiff tested at grade level 1.3 to a high of 2.3 in science. Plaintiff was noted to be below grade level in second grade as well, but he advanced to third grade. Plaintiff was not promoted to fourth grade and instead repeated third grade; in his second year in third grade, Plaintiff was again noted to be below grade level. Scores from a California Achievement Test given to Plaintiff several times from 1980 to 1984 show Plaintiff generally scored below his grade level. Plaintiff was in speech therapy in 1984-1985 due to problems with articulation. Although Plaintiff was graded satisfactory in health classes, music, and art, Plaintiff's grades from the fourth grade through the eighth grade were generally Ds and Fs, with an occasional C and one B in physical education. Plaintiff was in special education resource classes for reading from 1985 to 1989. It appears Plaintiff repeated ninth grade before leaving school, as there are grades and separate classes indicated for the ninth grade in years 1989-1990 and 1990-1991; Plaintiff only received one credit for the school year 1989-1990. A basic skills achievement test administered in 1987 indicated Plaintiff mastered 10% of the reading objectives and 33% of the math objectives; the same test administered in 1989 indicated 0% of reading objectives and 26% of math objectives. The test was administered twice in 1990, and Plaintiff received a score of 38% in language and 76% in math the first time, and 62% in language the second time.

*Id.* at *2 (footnote and internal citations omitted).

### B. Medical Records[1]

As also found in the first R&R,

> Plaintiff complained of anxiety to his primary care physician as early as 2006. In August 2009, Plaintiff first sought mental health treatment at Volunteer Behavioral Health. During this initial assessment, Plaintiff reported problems sleeping after the death of his wife, anxiety being around people, and hearing voices; he had never had mental health treatment before and stated he could not work because he could not stand to be around people. Plaintiff was diagnosed with an anxiety disorder, not otherwise specified and he was assigned a Global Assessment of Functioning ("GAF") score of 50.

---

[1] Because Plaintiff only makes an argument that he meets Listing 12.05C and does not argue the ALJ erred in his determination as to Plaintiff's physical impairments, the medical records summarized will focus on his mental impairments.

3

During a subsequent treatment session on September 15, 2009, Plaintiff reported that he would start sweating in crowds and heard voices; he was depressed, paranoid, and had anger issues. Plaintiff also reported problems sleeping because his sleep apnea mask felt like it was smothering him. Plaintiff was diagnosed with a psychotic disorder, not otherwise specified; bereavement; a learning disorder, not otherwise specified; and an anxiety disorder, not otherwise specified. The diagnoses were of moderate severity and his GAF score was 50. On October 15, 2009, Plaintiff refused to take the medication prescribed by Volunteer Behavioral Health and reported Ativan prescribed by his primary care physician was not helping; Plaintiff wanted to be prescribed Xanax. On November 3, 2009, Plaintiff stated he was taking his medication and his mood, depression, and irritability had improved. Plaintiff's GAF score was 55. During a visit on December 3, 2009, Plaintiff reported having severe anxiety attacks and needed two Valium at a time to prevent the attacks; he was still hearing voices and his GAF score was 55.

Plaintiff underwent a psychological consultative evaluation with Benjamin Biller, M.S. on December 14, 2009. During the evaluation, Plaintiff stated he had problems in school and was enrolled in special education classes and that he could not read or write; he also reported that his physical problems had contributed to anxiety and depression. Plaintiff reported having social problems, difficulty being with people because he could not keep up with them intellectually, and a dislike of being in crowded places. Mr. Biller opined that Plaintiff was not trying to appear less competent than he actually was and was functioning in the very low range of intelligence based on his conversation, ability to respond to questions and past experiences. Mr. Biller noted Plaintiff was socially withdrawn during the examination and he reported being unable to do his own grocery shopping or look up a name in a phone book. Mr. Biller administered the Weschler Adult Intelligence Scale-III test, on which Plaintiff obtained a verbal IQ of 65, a performance IQ of 68, and a full scale IQ of 63. On the Wide Range Achievement Test ("WRAT"), Plaintiff was reading at a second grade level, spelling at a third grade level, and his math skills were at a fourth grade level; all scores were in the first percentile or below. Based on the subtest scores and Plaintiff's scores on the Wide Range Achievement Test, Mr. Biller opined the scores indicated an individual who was likely mentally retarded. Mr. Biller diagnosed Plaintiff with a dysthymic disorder, polysubstance dependence in reported remission, social phobia, and mild mental retardation and assigned Plaintiff a GAF score of 45.

4

On December 31, 2009, Plaintiff returned to Volunteer Behavioral Health and reported satisfaction with a medication change and stated his anxiety was a lot better with medicine. Dr. Norma J. Calway-Fagen reviewed Plaintiff's file on February 10, 2010 and opined that Plaintiff was experiencing borderline intellectual functioning based on his IQ score, as he had no history of mental retardation documented in the record. Dr. Calway-Fagen opined Plaintiff was moderately limited in a number of areas, including the ability to understand and carry out detailed instructions and make simple work-related decisions, and was markedly limited in his ability to interact appropriately with the general public. Dr. P. Davis affirmed Dr. Calway-Fagen's assessment on May 19, 2010.

During a visit with Volunteer Behavioral Health on February 26, 2010, Plaintiff reported he had stopped taking one of his medications due to incontinence, he was moderately depressed and irritable, was having anxiety attacks in public or around people, and was still occasionally hearing non-threatening and non-commanding voices. His GAF score was 52. On March 30, 2010, Plaintiff reported the voices were cussing him and calling him names; he was depressed sometimes and still experiencing anxiety in public places. During Plaintiff's next visit on May 13, 2010, Plaintiff reported increased anxiety and depression, as he was not coping well with stressors. On July 8, 2010, Plaintiff reported still hearing voices at times and his depression was moderate, but his anger was less intense and less frequent; Plaintiff was experiencing stress from not having a job and was frustrated that he had been turned down for disability twice. Plaintiff's GAF score was 55. During a September 28, 2010 visit, Plaintiff reported increased mood swings, high depression, was still hearing voices, and was getting irritable easily. Plaintiff reported noncompliance with his medications on October 27, 2010 due to side effects. On November 18, 2010, Plaintiff reported mood swings, was still occasionally hearing voices, and reported financial problems and conflict with his wife. Plaintiff's depression and stress were improved on December 16, 2010, and his anxiety was mild to moderate. Plaintiff was frustrated by many problems, including financial issues, on March 4, 2011 and he was still hearing voices.

*Id.* at *3-4 (footnote and internal citations omitted).[2] In addition, on remand the ALJ provided an extensive review of Plaintiff's pertinent medical records that need not be repeated herein.

During the hearing on remand, Plaintiff, a vocational expert, and a medical expert, Dr. Olin Hamrick (by telephone), testified (Tr. 507). Based on his review of medical records, Dr. Hamrick directly testified that Plaintiff did not meet the criteria for 12.05C (Tr. 510). It appears, however, that Dr. Hamrick primarily based this opinion on Listing 12.05 criteria not at issue in this case, i.e., Plaintiff's full-scale intelligence testing score from 2013 (Tr. 509-10). He noted that Plaintiff did not meet Listing 12.05 because his full scale score in 2013 was 74, which is in the borderline intellectual range and because "there is no reason to believe that his intellectual potential would have been any lower before this in 2013."[3] (Tr. 510). Dr. Hamrick also opined there was evidence Plaintiff had "at least a moderate limitation . . . in concentration, persistence, and pace, due to his borderline intellectual functioning and learning disorders and moderate to possibly marked limitations of his social functioning in work situations" (Tr. 512) and moderate limitations in activities of daily living (Tr. 513).

### III. ELIGIBILITY AND THE ALJ'S FINDINGS

#### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

---

[2] It should be noted that "[t]he phrase 'intellectual disability' has replaced 'mental retardation' in Listing 12.05. Since the vast majority of the record uses the old term, 'mental retardation,' [I] do so as well." *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 536 n.1 (6th Cir. 2014) (internal citations omitted).

[3] Borderline intellectual functioning is a "lesser diagnosis than mental retardation." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013).

2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of the sequential evaluation process, the ALJ again found Plaintiff had not engaged in any substantial gainful activity since January 30, 2004 (Tr. 464). The ALJ repeated his prior conclusion that Plaintiff had not performed any substantial gainful activity since January 30, 2004, the alleged disability onset date, despite some limited work activity after this date (Tr. 464). At step two, the ALJ found Plaintiff had the following "severe impairments," some of which were included his prior decision: arthritis of the shoulder, morbid obesity, carpal tunnel syndrome, diabetes mellitus, peripheral neuropathy, degenerative disc disease, borderline intellectual functioning, depression, and anxiety (Tr. 464-65). The ALJ determined these severe impairments caused a significant limitation in Plaintiff's ability to perform basic work activities (Tr. 465).

7

At step three, of chief importance here, the ALJ found Plaintiff did not have any impairment or combination of impairments that would meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 465). More specifically, the ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.02, 12.04, 12.05, 12.06, or 12.09 (Tr. 465-70). The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some limitations (Tr. 470-71). At step four, the ALJ found Plaintiff could not perform any of his past relevant work (Tr. 476-77). At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, and therefore he was not disabled (Tr. 477-78).

## IV.  ANALYSIS

The parties agree that Plaintiff has both severe physical[4] and mental impairments. The parties also agree that the sole question remaining in this matter is whether Plaintiff meets the criteria for Listing 12.05C.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of

---

[4] The Plaintiff's physical impairments are only relevant here to the extent they reach the minimum threshold of impairment necessary to invoke Listing 12.05C and need not be addressed in detail herein.

8

the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

9

### B. Listing 12.05C

Dr. Hamrick opined that Plaintiff did not experience a marked impairment in two or more of the "paragraph B" criteria. Plaintiff argues that in relying on Dr. Hamrick's opinion, the ALJ misapprehended the requirements of Listing 12.05C. Specifically, Plaintiff argues the ALJ erred by finding that his deficits in adaptive functioning must rise to the level of "marked" impairments, as with some of the other mental listings and that these "B" criteria are not a requirement of Listing 12.05C. Plaintiff argues that Listing 12.05C requires only deficits in adaptive functioning beginning before age 22, without a minimum severity level—i.e., the deficits do not need to be "extreme" or even "marked." In making this argument, Plaintiff cites to cases where courts have determined that a "moderate" limitation in these areas of functioning is sufficient to meet the requirements of Listing 12.05C.

Further, Plaintiff argues that Dr. Hamrick's opinion actually demonstrates he does meet the requirements of Listing 12.05C because he suffers from "moderate limitations in maintaining concentration, persistence and pace; a moderate to marked limitation in maintaining social functioning and no greater than moderate limitation in activities of daily living" [Doc. 9 at Page ID # 899, citing Tr. 469]. Plaintiff argues that he suffers from sufficient adaptive deficits to meet the requirements of Listing 12.05C, that his school records support his adaptive functioning deficits having existed prior to age 22, and that his school records do not contradict subaverage general intellectual functioning prior to age 22. Plaintiff also asserts his vocational work history and his limited ability to perform basic activities are not inconsistent with adaptive functioning deficits sufficient to meet the requirements of Listing 12.05C. Plaintiff further argues that a qualifying IQ score is reflective of life-long functioning.

The Commissioner argues the ALJ did not commit legal error and that substantial evidence supports the ALJ's decision. The Commissioner notes that Plaintiff's argument that the ALJ misapprehended the requirements of Listing 12.05C by requiring a showing of "marked" or "severe" deficits in adaptive functioning which manifested before age 22 is not supported by any citation to the ALJ's decision. The Commissioner asserts the ALJ properly noted Plaintiff had low grades and was held back twice, but also noted that Plaintiff's school performance was likely affected by absenteeism because his grades were better when he attended school. The Commissioner further argues the ALJ properly found Plaintiff's activities of daily living and work history contradict any assertion that Plaintiff had such deficits prior to age 22. The Commissioner argues Plaintiff's medical records are consistent with a finding that Plaintiff does not meet the criteria of Listing 12.05C because Plaintiff's medical providers diagnosed him with a learning disorder—not mental retardation, and state-agency medical consultants, including Dr. Hamrick, determined that Plaintiff had borderline intellectual functioning—not mental retardation. Finally, the Commissioner argues that the ALJ properly noted Plaintiff's alleged changes in adaptive functioning occurred as a result of depression and bereavement following the death of his first wife in 2004 when Plaintiff was 29, well beyond the age-22 cutoff.

As stated in the first R&R, at the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of proving every element of the listings. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). Listing 12.05C states:

> [Mental retardation] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D. are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05 (2015).

To qualify for Listing 12.05C, a claimant must have a valid IQ score of 60 to 70, have other "severe" impairments, and meet the "diagnostic description" found in the introductory paragraph of Listing 12.05C (i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22"). *Foster*, 279 F.3d at 354-55.[5] The diagnostic description of Listing 12.05C contains three separate requirements. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In addition to meeting the criteria in one of the sections (A, B, C, or D), a claimant must prove: (1) he suffers from "significantly subaverage general intellectual functioning," (2) he suffers from "deficits in adaptive functioning," and (3) these deficits in

---

[5] Listing 12.05 requires only a single qualifying IQ score, and Plaintiff has a qualifying score.

adaptive functioning initially manifested before age 22. *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).[6]

If Listing 12.05C is met, the finding of disability is final even if Plaintiff possesses the RFC to perform some types of work. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) ("If the impairment meets or equals [the listing], the claimant is conclusively presumed to be disabled."); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson*, 552 F. App'x at 539 (citations omitted).

As stated in the first R&R:

> Plaintiff bears the burden of showing he had "deficits in adaptive functioning" before age 22. *Foster*, 279 F.3d at 354. "The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009). The Social Security Administration has yet to quantify how severe the "deficits" must be in order for a claimant to qualify as mentally retarded, *Walls v. Astrue*, 561 F.3d 1048, 1074 (10th Cir. 2009), but this Court has previously indicated the deficits must be more than "potential" or "moderate." *Payne v. Comm'r of Soc. Sec.*, No. 3:07-CV-251, 2008 WL 2894482, at *4 (E.D. Tenn. Jul. 23, 2008). The Supreme Court of the United States, quoting from the Manual of Mental Disorders, described adaptive deficits as "a person's effectiveness in areas such as social skills, communication, daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). Activities such as

---

[6] In remanding this case, and as set forth in greater detail in the first R&R, this Court found that Plaintiff had met all requirements of Listing 12.05C except the deficient in adaptive functioning before age 22 requirement. On remand, the ALJ properly stated the "critical determination is whether the claimant suffers from deficits in adaptive functioning and if these deficits in adaptive functioning initially manifested before age 22." (Tr. 465).

13

> cleaning, shopping, cooking, maintaining a residence, and caring for personal hygiene are considered "adaptive activities" under the applicable regulation. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00C(1). The Sixth Circuit has noted that "[t]he American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments ... in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.' " *Hayes*, 357 F. App'x at 677 (quoting DSM–IV–TR at 49).

*Cox*, 2012 WL 4748347, at *8. The ALJ articulated much of the above precedent in his extensive findings concerning Listing 12.05C.

Listing 12.05 does not state how severe the limitations must be in order to qualify as "deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The first R&R, as adopted without objection by any party, recognized the Social Security Administration has yet to quantify how severe the "deficits" must be in order for a claimant to qualify as mentally retarded, but noted this Court had previously determined the deficits must be more than "potential" or "moderate" to meet Listing 12.05. While no Sixth Circuit case is directly on point, other federal courts both within and without the Sixth Circuit agree the deficits must be significant to satisfy Listing 12.05C. *See, e.g.*, *Gethin v. Colvin*, No. 3:14-CV-53-DW, 2014 WL 4104130, at *10 (W.D. Ky. Aug.19, 2014); *Robinson v. Comm'r of Soc. Sec.*, No. 2:13-cv-530, 2014 WL 3419309, at *8 (S.D. Ohio July 10, 2014); *Harris v. Comm'r. of Soc. Sec.*, 330 F. App'x. 813, 815-16 (11th Cir. 2009).

The ALJ gave greater weight to the opinion of Dr. Hamrick who testified, among other things, that Plaintiff did not meet the criteria for 12.05C (Tr. 468-69, 510-11). It appears, however, that Dr. Hamrick primarily based this opinion on Listing 12.05 criteria not at issue in this case, i.e., Plaintiff's full-scale intelligence testing score from 2013 (Tr. 509-10). Dr.

Hamrick also considered the opinions of the consultative examiners found in the record, as well as Plaintiff's functional mental limitations (Tr. 510-12). In particular, he addressed their findings with regard to Plaintiff's limitations in activities of daily living, social functioning, and concentration and persistence and pace as it related to Plaintiff's post alleged onset date functioning and listings other than 12.05C (Tr. 510-16). He noted that, since Plaintiff's alleged onset date, he had other mental diagnoses, such as anxiety disorder and dysthymic disorder (Tr. 512). Dr. Hamrick noted Plaintiff had worked in a factory setting and was not fired due to cognitive limitations or an inability to get along with others, he took care of his children, he obtained a driver's license until it was revoked due to DUIs, and he did household chores (Tr. 513, 515). Dr. Hamrick found that while the record supported some limitations in mental functioning, Plaintiff did not exhibit deficits in adaptive functioning to the extent required by the listings (Tr. 510-16).

After careful consideration of the entire record, I **FIND** the ALJ did not erroneously require Plaintiff to demonstrate "marked" deficits in adaptive functioning in order to meet the requirements of Listing 12.05. Instead, the ALJ gave greater weight to the opinion of Dr. Hamrick, who found Plaintiff to have certain deficits in adaptive functioning. He then devoted pages of the decision to analyzing the extent of Plaintiff's deficits in adaptive functioning and whether they initially manifested before age 22 (Tr. 465-70). The ALJ's discussion of the need for proof of marked deficits and paragraph B criteria appears to relate to mental health listings other than 12.05C, including listings 12.02, 12.04, 12.06, and 12.09, and to Plaintiff's arguments that he experienced marked limitations (Tr. 465-76). The ALJ recited voluminous evidence in the record to support his conclusion that Plaintiff did not experience deficits in adaptive functioning manifesting to the extent required by Listing 12.05C (Tr. 465-70). Thus, I **FIND**

15

the ALJ did not commit legal error by applying the wrong standard to his Listing 12.05C determination.

Plaintiff's next argument boils down to a claim that substantial evidence does not support the ALJ's 12.05C conclusion. In making the argument that he satisfies the Listing 12.05C requirement of deficits of adaptive functioning manifesting before age 22, Plaintiff points to Dr. Hamrick's opinion that Plaintiff suffered from moderate limitations in maintaining concentration, persistence, and pace; a moderate to marked limitation in maintaining social functioning, and moderate limitations in activities of daily living.

On remand, the ALJ engaged in an exhaustive discussion of Plaintiff's education records, including that while Plaintiff had mostly failing and low grades and was held back twice, absenteeism was likely a factor. Unfortunately for Plaintiff, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x. 672, 677 (6th Cir. 2009). Likewise, poor school performance does not require a finding of adaptive functioning deficits manifesting prior to age 22 to the extent required by Listing 12.05C. *See, e.g., Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 587 (6th Cir. 2013) (holding that substantial evidence supported ALJ's decision that plaintiff failed to meet the "adaptive functioning" requirement of Listing 12.05C where the plaintiff was enrolled in special education classes, but dropped out after the ninth or tenth grade and had basic reading and mathematical proficiency); *Eddy v.. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (holding an eighth grade education with a history of special education classes did not establish deficits in adaptive functioning prior to age twenty-two); *Foster*, 279 F.3d at 352-55 (holding a ninth-grade education completed through special education classes, followed by numerous

unsuccessful attempts at a GED, coupled with an adult full scale IQ of 69 did not establish adaptive functioning deficits prior to age twenty-two); *Peterson*, 552 F. App'x at 540 (holding that an eighth grade education with a history of special education classes does not establish deficits in adaptive functioning prior to age 22)).

The ALJ also thoroughly discussed other evidence supporting his decision such as activities of daily living, employment, and treatment records and opinions that he found to be inconsistent with Plaintiff's claim of deficiencies in adaptive functioning manifesting before age 22. It is well settled that this Court must "defer to the ALJ's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012) (quoting *Foster*, 279 F.3d at 353) (internal quotation marks omitted). As a result, reversal is not warranted "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772. This case was remanded to the ALJ to specifically consider and articulate his Listing 12.05C findings and he did so. I **FIND** there is sufficient evidence in the record to support the ALJ's conclusions concerning Listing 12.05C.[7]

## V.     CONCLUSION

---

[7] There is no significant contradiction between the ALJ's finding that Plaintiff did not suffer from deficits in adaptive functioning initially manifesting before age 22 and the ALJ's finding that Plaintiff had moderate or moderate to marked functional limitations due to mental impairments since his alleged onset date because the ALJ's latter finding took into account Plaintiff's depression and bereavement following the death of Plaintiff's first wife when he was 29, as argued by the Commissioner.

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[8] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 8] be **DENIED**;

2) Defendant's motion for summary judgment [Doc. 10] be **GRANTED**; and

3) Defendant's decision denying benefits be **AFFIRMED.**

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).